

NUMBER 13-22-00011-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG

IN THE INTEREST OF A.M.A., A CHILD.

On appeal from the 135th District Court
of Victoria County, Texas.

## MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Silva**
**Memorandum Opinion by Justice Longoria**

Appellant C.G. appeals the trial court's judgment involuntarily terminating her parental rights with respect to her minor child A.M.A.[1] By her first four issues, C.G. contends the evidence is legally and factually insufficient to support a finding that she violated § 161.001(b)(1)(D), (E), (M), and (N) of the Texas Family Code as alleged by appellee the Texas Department of Family and Protective Services (the Department). *See*

---

[1] We refer to appellant and the child by their initials in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2).

TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M), (N). By her fifth issue, C.G. challenges the sufficiency of the trial court's finding that termination was in the child's best interest. *See id.* § 161.001(b)(2). We affirm.

## I. BACKGROUND

On February 19, 2021, A.M.A. tested positive for amphetamines at birth. C.G. tested positive for amphetamines and "Benzos."[2] At trial, Miranda Baker, a former investigator with the Department, testified that she received a report regarding a positive drug test for C.G. and A.M.A. While C.G. was still in the hospital, Baker interviewed C.G. and A.A.[3], the child's father. Both parents admitted to using methamphetamine in the days prior to A.M.A.'s birth but attributed the drug-use to "a one-time mistake." C.G. admitted to using methamphetamine prior to delivery and stated she took prescribed Xanax throughout her pregnancy. During the interview, the parents offered the names of family members for possible placement of A.M.A. during the pendency of the investigation. Baker testified that the options were not appropriate for A.M.A. and explained that prior to A.M.A.'s birth, C.G. had been previously investigated by the Department following reports of domestic violence and drug use. C.G. had an active case with the Department involving her three other children at the time the Department opened the investigation regarding A.M.A. Ultimately, C.G.'s parental rights to her three elder children were terminated. On February 24, 2021, based on the family's history with the Department, the positive drug tests at the hospital and admission of drug use, and a

---

[2] Benzodiazepines are medications known as tranquilizers, e.g., Valium and Xanax.

[3] A.A.'s parental rights were also terminated. A.A. is not a party to this appeal.

2

"totality of the circumstances," the Department filed a petition seeking conservatorship of A.M.A. and termination of C.G. and A.A.'s parental rights. The Department was appointed temporary managing conservator on an emergency basis, and A.M.A. was placed in a foster home with her sister, the youngest of the three elder children to whom C.G. had her parental rights terminated.

Karen Ortiz-Washington testified that she was the Department caseworker assigned to C.G. for the investigation involving C.G.'s elder three children, as well as in the current matter with A.M.A. After A.M.A.'s removal, a service plan was developed, and Ortiz-Washington reviewed the plan with C.G. The service plan was adopted by the trial court and ordered that C.G. maintain stable housing and income, refrain from criminal activity, complete parenting classes, attend visitation, develop a stable support system, complete a drug/alcohol assessment and all recommendations, participate in random drug testing, with missed tests considered presumptively positive, participate in anger management counseling, provide medical records to ensure she is taking care of her health appropriately, complete a psychological evaluation and all recommendations, attend individual counseling, participate in couple's counseling with A.A., and attend an anger management course. At trial, C.G. admitted that she had not worked on her service plan. Specifically, C.G. only attended approximately eleven of the thirty-four scheduled visits with A.M.A., missed sixteen drug tests and refused to provide a sample for four drug tests, and was incarcerated prior to trial. Ortiz-Washington stated that A.A. was required to attend a batterer's intervention program, which he did not do, because of a history of domestic violence with C.G. She explained that C.G. had previously appeared with

3

bruising and marks on her body which C.G. told her came from altercations with A.A.

Ortiz-Washington testified that at the time of A.M.A.'s birth C.G. was living in a motel with A.A. that Ortiz-Washington deemed unsafe for a child. At her last visit in October 2021, Washington testified C.G. was arrested in the motel room. Ortiz-Washington described the motel as "filthy," explaining that there was trash, lighters, and various items that could pose a threat to a child. Methamphetamine residue was found on the coffee table. Ortiz-Washington indicated that there were no baby items in the room, such as a crib, playpen, or baby food. Ortiz-Washington believed that C.G. had enough time to complete her service plan prior to incarceration and noted that C.G. took no steps to do so. Ortiz-Washington testified that she did not believe C.G. would complete services and that termination was in the best interest of A.M.A., who was thriving in her current placement. Washington explained that A.M.A. is placed with her older sister, they are "very bonded," and A.M.A. has done very well in her placement where all her needs have been met.

Christina Jackson, a court-appointed special advocate supervisor, agreed that termination of C.G.'s parental rights was in A.M.A.'s best interest because C.G. has never been able to demonstrate an ability to overcome the concerns that led to A.M.A. being removed from her care and could not provide a safe and stable environment for A.M.A. Jackson also confirmed that A.M.A. was doing well in her current placement.

C.G. testified that she was hopeful to have A.M.A. returned to her care when she was released from jail. Though she refused to explain why she had been arrested, nor did she provide any details regarding her criminal case, she suggested that she believed

4

she would be released on probation in the near future. C.G. explained that at the time of A.M.A.'s birth, she had high blood pressure issues and was on "heavy medication," which made it difficult to visit her daughter in the hospital. She admitted that she did not see a doctor for her medical issues because she "was going through a lot." C.G. testified that she had various items necessary to bring A.M.A. home after her birth, including a crib, stroller, floor mats, formula, clothing, and diapers.

C.G. explained that she believed she could complete her service plan if she was given more time. She admitted to prior drug use but stated that she was clean and sober at the time of trial and could stay that way. She stated that she had time to think things through and wants to help herself get better so that she can have her child back in her own home. According to her testimony, C.G. contacted Gulf Bend Coastal Services (Gulf Bend) where she had previously seen a psychiatrist. She stated that she is beginning services with them, and she believes she will be put on medication when she is released from incarceration. C.G. also stated that Gulf Bend will assist her in getting housing. She explained that the Department was not aware that she was seeking services through Gulf Bend. While she did not know for sure, she testified that she anticipated she would get probation, or her current charges would be dropped, and she would soon be released.

The Department sought termination with a goal of unrelated adoption. Counsel for the parents sought a continuance, seeking more time for completion of the service plan and possible family member placements. The trial court took the matter under advisement and subsequently ordered C.G.'s parental rights to A.M.A. be terminated under §

5

161.001(b)(1)(D), (E), (M), and (N). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M), (N). This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

"Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.)). Therefore, termination of the parent-child relationship must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Before terminating the parent-child relationship, the trial court must find by clear and convincing evidence that the parent committed one of the acts prohibited by § 161.001(b)(1)(A–T) of the Texas Family Code and that termination is in the child's best interest. TEX. FAM. CODE ANN. §§ 161.001(b)(1)(A–T), (b)(2); *In re J.L.*, 163 S.W.3d at 84.

The "clear and convincing" intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *Porter v. Tex. Dep't of Protective & Regul. Servs.*, 105 S.W.3d 52, 57 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.). It is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re*

*J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). In our legal sufficiency analysis, we must view the evidence in the light most favorable to the finding, we "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and we "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d at 266). However, this does not mean that we must disregard all evidence that does not support the finding. *In re J.F.C.*, 96 S.W.3d at 266. Because of the heightened standard, we must also be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id*. If we determine that no reasonable trier of fact could form a firm belief or conviction that the matter that must be proven is true, we must hold the evidence to be legally insufficient and render judgment in favor of the parent. *Id*.

In a factual sufficiency review, "[w]e must determine whether, on the entire record, a fact[]finder could reasonably form a firm conviction or belief that the parent violated a provision of [§] 161.001[(b)](1) and that the termination of the parent's parental rights would be in the best interest of the child." *In re M.C.T.*, 250 S.W.3d 161, 168 (Tex. App.—Fort Worth 2008, no pet.) (citing *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002)). Under this standard, we consider whether the "disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266. If we conclude that "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually

7

insufficient." *Id.*

A parental rights termination decree must be based on at least one predicate ground. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). If multiple predicate grounds are found by the trial court, we affirm based on any one ground because only one is necessary for termination of parental rights. *In re T.N.F.*, 205 S.W.3d 625, 629 (Tex. App.—Waco 2006, pet. denied). Therefore, to prevail on appeal, a party must challenge the sufficiency of each affirmative finding of a predicate ground for termination or at a minimum challenge the best interest finding. *In re S.N.*, 272 S.W.3d 45, 49 (Tex. App.—Waco 2008, no pet.). However, if parental rights are terminated pursuant to § 161.001(b)(1)(D) or (E), we must determine whether the evidence supports that finding even if there are other grounds for termination. *See In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) ("[D]ue process . . . requires a heightened standard of review of a trial court's finding under [§] 161.001(b)(1)(D) or (E), even when another ground is sufficient for termination. . . .").

## B.     Section 161.001(b)(1)(D)

By her first issue, C.G. contends that the evidence was legally and factually insufficient to support termination under § 161.001(b)(1)(D). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). She argues that she never had custody of A.M.A. and "therefore, could not have exposed the child to an environment that endangered its physical or emotional well-being."

### 1.     Applicable Law

Section 161.001(b)(1)(D) provides for termination of parental rights if there is clear

and convincing evidence supporting a finding that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." *Id.* Subsection D addresses the child's surroundings and environment. *In re N.R.*, 101 S.W.3d 771, 775–76 (Tex. App.—Texarkana 2003, no pet). In this context, the child's environment refers to the suitability of the child's living conditions as well as the conduct of parents or others in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards." *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

We examine evidence of the parent's conduct and the child's living environment before the time the Department removes the child. *Ybarra v. Tex. Dep't of Human Servs.*, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi–Edinburg 1993, no writ); *see also In re A.G.*, No. 07-17-00440-CV, 2018 WL 1999171, at *5–6 (Tex. App.—Amarillo Apr. 27, 2018, pet. denied) (mem. op.). Parental and caregiver illegal drug use and drug-related criminal activity supports the conclusion that the child's surroundings endanger their physical or emotional well-being. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). Subsection D permits termination based on only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied); *see also In re L.S.*, No. 13-18-00632-CV, 2019 WL 1474521, at *7 (Tex. App.—Corpus Christi–Edinburg Apr. 4, 2019, pet. denied) (mem. op.).

### 2. Analysis

The evidence shows that C.G. knowingly used illegal drugs throughout her pregnancy. At birth, A.M.A. tested positive for the presence of illegal drugs, supporting an inference that C.G.'s drug use created conditions or surroundings that exposed A.M.A. to the substances *in utero*. We hold this evidence to be legally and factually sufficient to support the finding that C.G. knowingly placed A.M.A. in conditions or surroundings that endangered the child's physical well-being. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) ("A mother's use of drugs during pregnancy may amount to conduct that endangers the physical and emotional well-being of the child." (citing *In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.))); *see also In re B.R.*, No. 02-11-00146-CV, 2011 WL 5515502, at *4 (Tex. App.—Fort Worth 2011, no pet.) (mem. op.) (holding that evidence of mother's heroin use throughout pregnancy permitted factfinder to reasonably conclude mother "knowingly placed or knowingly allowed [child] to remain in conditions or surroundings that endangered his physical well-being while in the womb"); *In re L.V.*, No. 13-10-283-CV, 2011 WL 676020, at *5 (Tex. App.—Corpus Christi–Edinburg Feb. 24, 2011, no pet.) (finding evidence was sufficient to terminate under subsection D where all three of appellant's children were exposed to cocaine *in utero*). We overrule C.G.'s first issue.

### C. Section 161.001(b)(1)(E)

By her second issue, C.G. contends that the evidence was legally and factually insufficient to support termination under § 161.001(b)(1)(E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). She again argues that because she never had custody of A.M.A. "the

10

record [does not] support the finding that [C.G.] engaged in conduct that endangered or abused her children."

1.    **Applicable Law**

Subsection E permits termination if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* Under subsection E, endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Rather, "endanger" means to expose the child to loss or injury or to jeopardize his emotional or physical well-being. *Id.*

The trial court must determine "whether evidence exists that the endangerment of the child's physical well-being was the direct result of [the parent's] conduct, including acts, omissions, or failures to act." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied). Courts may consider parental conduct that did not occur in the child's presence, including that which occurred before the child's birth or after removal from a parent's care. *In re J.T.G.*, 121 S.W.3d at 125–26; *see also In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *4 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.).

Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.). Thus, evidence of illegal drug use by a parent and its effect on the parent's life and ability to parent may establish an endangering course of

11

conduct under subsection E. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009); *In re K-A.B.M.*, 551 S.W.3d 275, 287 (Tex. App.—El Paso 2018, no pet.) ("A parent's use of drugs may qualify as an endangering course of conduct.").

### 2.    Analysis

The evidence showed that upon A.M.A.'s removal due to C.G.'s drug use during pregnancy and the positive drug tests of C.G. and A.M.A. at her birth, C.G. failed to complete any drug rehabilitation program, failed to appear for sixteen drug tests, refused to provide samples for four urinalysis tests, and drug residue was found in her motel room upon her arrest. C.G. testified that she was "clean and sober" at the time of the trial, however, she was incarcerated at that time. During the time prior to incarceration, she showed no indication of discontinuing her drug use.

Evidence of illegal drug use supports a conclusion that a child's surroundings endanger his or her physical or emotional well-being. *See In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.) (finding mother violated subsection (D) and (E) when she exposed children to domestic violence, placed them in an environment of drug abuse, and refused to participate in her child protective services service plan).

This evidence permitted the trial court as factfinder to form a firm belief or conviction that at the time of A.M.A.'s removal, C.G. had been engaged in criminal behavior, used illegal drugs, and engaged in conduct that exposed A.M.A. to benzodiazepines and amphetamines to a degree that posed a danger to the child. In her caseworker's opinion, C.G. had engaged in conduct which endangered A.M.A.'s physical or emotional well-being. We conclude the evidence is legally and factually sufficient to

support the trial court's finding under subsection E. We overrule C.G.'s second issue.[4]

## D.    Best Interest

The Department is also required to prove by clear and convincing evidence that termination of C.G.'s parental rights is in A.M.A.'s best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d 101, 116 (Tex. 2014). There is a "strong presumption" that the best interest of the child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, the presumption is not irrebuttable; the Texas Family Code and direction from the Supreme Court of Texas provide additional factors for assessing the best interest of a child. *See* Tex. Fam. Code Ann § 263.307; *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Included among these are the following: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child

---

[4] C.G. challenges the legal and factual sufficiency of all four of the statutory grounds for termination pleaded by the Department. However, when multiple grounds for termination are sought only one finding under § 161.001(b)(1) is necessary to support a judgment of termination. *See* Tex. Fam. Code Ann. § 161.001(b)(1); *In re S.F.*, 32 S.W.3d 318, 320 (Tex. App.—San Antonio 2000, no pet.); *see also Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990) (op. on reh'g). Accordingly, because we conclude there is both legally and factually sufficient evidence to support the trial court's findings under family code § 161.001, subsections D and E, we need not address C.G.'s remaining points with respect to the trial court's findings under § 161.001, subsections M and N. Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (M), (N); *see* Tex. R. App. P. 47.1.

13

relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *See Holley*, 544 S.W.2d at 371–72. The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child. *In re C.H.*, 89 S.W.3d at 27; *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

In addition to the foregoing factors, evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination of parental rights is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28; *see also In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). In making our determination, we may consider "circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence" while measuring a parent's future conduct by his or her past conduct and determine whether termination of parental rights is in the child's best interest. *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *see In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.) ("[A] fact[]finder may infer from past conduct endangering the well-being of a child that similar conduct will recur if the child is returned to the parent.").

The following evidence favors the trial court's finding that termination is in the best interest of the child: (1) C.G.'s drug use during pregnancy, including positive tests for her and A.M.A. at the time of A.M.A.'s birth; (2) C.G.'s failure to appear or refusal to submit to required drug testing; (3) the history of domestic violence in the household; and (4) C.G.'s failure to attend over 60% of the scheduled visits with A.M.A. At the time of the trial, A.M.A. was less than a year old, too young to express her desires. *See In re S.R.*, 452 S.W.3d at 369 ("[W]hen [a child] is too young to express [her] desires, the factfinder may consider whether the [child] has bonded with the foster family, [is] well-cared for by them, and [has] spent minimal time with the parent.").

In the time between removal and trial, C.G. lived in two different motel rooms, both described by the Department as "filthy" and unsafe for a child. She lacked a stable job and transportation throughout the duration of the proceedings. C.G. admitted that although she suffered from severe high blood pressure, she failed to care for her own medical needs. Aside from stating that she would attempt to work on her service plan after incarceration, she could not provide any evidence of how she would care for A.M.A.'s needs.

The Department, on the other hand, presented evidence that A.M.A.'s foster placement is meeting all of her needs. A.M.A. has bonded to the family, is placed in the same home with her biological sister, and is thriving in her placement. The Department indicated the foster family intended to adopt A.M.A.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or

15

conviction that termination of C.G.'s parental rights was in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to comply with a family-service plan in holding the evidence supported the best-interest finding); *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail evidence if affirming a termination judgment). We conclude that factually sufficient evidence supports the trial court's best interest findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We overrule C.G.'s fifth issue.

### III. CONCLUSION

We affirm the trial court's order terminating C.G.'s parental rights.

NORA L. LONGORIA
Justice

Delivered and filed on the
14th day of April, 2022.

16